STATE *ex rel.* C. M. HARPER, Plaintiff in Error, v. W. J. McDAVID, as Assessor of Taxes of Escambia County, and THE HOUSING AUTHORITY OF THE CITY OF PENSACOLA, Defendant in Error.

200 So. 100
En Banc
Opinion Filed January 7, 1941
Rehearing Denied February 4, 1941

*Philip D. Beall*, for Plaintiff in Error;

*J. McHenry Jones,* for Defendant in Error;

*Herbert S. Latham,* as *Amicus Curiae.*

TERRELL, C. J.—On petition of C. M. Harper, a citizen and taxpayer, alternative writ of mandamus was directed to W. J. McDavid as tax assessor and to the Housing Authority of the City of Pensacola commanding them to place on the tax rolls of Escambia County for the year 1940 and subsequent years certain lands owned by the Housing Authority or to show cause why they refuse to do so. Returns to the alternative writ were filed by both respondents and on final hearing the cause was dismissed. Writ of error was prosecuted.

The question presented is whether or not property owned by the housing authority of the City of Pensacola organized under Chapter 17981, Acts of 1937, and used for the conduct of a low-rent housing and slum clearance project is held exclusively for municipal or charitable purposes and is thereby exempt from taxation as contemplated by Section 1, Article IX, and Section 16 of Article XVI of the Constitution of Florida.

The latter section of the Constitution provides that the property of all corporations shall be subject to taxation unless held and used exclusively for municipal or charitable purposes. Section 1 of Article IX authorizes the Legislature to provide for a uniform and equal rate of taxation for all property except such as may be exempt for municipal, charitable, or other purposes.

Sections 1 and 2 of Chapter 17983, Acts of 1937, declare in substance that when there exist housing conditions in the State that are a menace to the health, safety, and morals of the people, that such conditions necessitate excessive expenditures for crime and fire prevention, health, and welfare, that the public safety demands the clearance of such

slum conditions by the erection of sanitary and better housing facilities and that when constructed by the Housing Authority they shall be deemed to be held and used exclusively for municipal purposes and to be held free from all species of taxation. It is further required that they be held not for profit and that in lieu of tax assessments, the Housing Authority may make payments to the city, town, county, or political subdivision for services, improvements, or facilities furnished but in no event shall said payments exceed the estimated cost of the services or improvements so furnished.

By Chapter 17981 and Chapter 17983, the Legislature has attempted to define and enlarge on what constitutes a municipal purpose. This Court has repeatedly said that it is competent for the Legislature to make classifications and exemptions of certain properties from taxation for particular public purposes. We have also conceded power in the Legislature to define a municipal purpose as contemplated by the provisions of the Constitution alluded to. Long v. St. John, *et al.*, 126 Fla. 1, 170 So. 317; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402; State *ex rel.* Gibbs v. Gordon, *et al.*, 138 Fla. 312, 189 So. 437.

In at least nine States with constitutional provisions almost identical with the provisions of the Florida Constitution providing for exemptions for municipal or charitable purposes, the Supreme Courts have upheld provisions of legislative Acts exempting properties of Housing Authorities identical with what we have here. Williamson v. Housing Authority of Augusta, 186 Ga. 673, 199 S. E. 43; Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N. E. (2nd) 193; Edwards v. Housing Authority of Muncie, (Ind.) 19 N. E. (2nd) 741; Ellis, City Solicitor, v. Sherill, 136 Ohio State 328, 25 N. E. (2d) 844; Dorman v. Phila-

delphia Housing Authority, 331 Pa. 207, 200 Atl. 834; McNulty v. Owens, 188 S. C. 377, 199 S. E. 425; Knoxville Housing Authority v. City of Knoxville, 174 Tenn. 76, 123 S. W. (2nd) 1085; Higginbotham, *et al.,* v. Dallas, *et al.* (Tex.), 142 S. W. (2nd), decided June 26, 1940; Chapman v. Huntington, et al. (W. Va.), 3 S. E. (2nd) 502.

It is contended that the business of the Housing Authority is in no sense municipal, that it is in direct competition with private enterprise and even though declared by the Legslature to be strictly municipal and charitable, its properties should not be exempt from taxation and that any attempt to make them so should be held in violation of the Constitution.

What constituted a municipal purpose is a legislative question that should not be interfered with by the courts in the absence of a clear abuse of discretion. A municipal purpose is much broader in its scope than it was a generation ago. Under our system of jurisprudence, constitutional validity may be determined by practical operation and effect. Measured by this test, we cannot say that the Legislature exceeded its power in pronouncing the properties of the Housing Authority held for a municipal purpose free from all forms of taxation. They are held not for profit, must be restricted to a low income group, and contribute materially to the health, morals, safety, and general welfare of the people. They aid materially in reducing the cost of fire prevention and police protection and the Housing Authority is authorized to make annual compensation to the City in lieu of taxes and other services furnished. There is no suggestion that the officers charged with the administration of the present scheme have failed in their duty and, being so, we must assume that the law has been faithfully observed.

The time was when a municipal purpose was restricted to police protection or such enterprises as were strictly governmental, but that concept has been very much expanded and a municipal purpose may now comprehend all activities essential to the health, morals, protection and welfare of the municipality. City of Fernandina v. State (Fla.), 197 So. 454. In State v. City of Tallahassee, 142 Fla. 476, 195 So. 402, we approved the construction of an office building as a proper municipal enterprise and in previous decisions we had approved airports, golf courses, school buildings, and other structures as proper for a city to undertake. Various phases of the Housing, Act have been before us in former decisions but nothing said in this opinion is in conflict wth any of them.

No abuse of dscretion or clear violation of the Constitution is shown, so the judgment of the chancellor is affirmed.

Affirmed.

WHITFIELD, BUFORD and THOMAS, J. J., concur.

CHAPMAN, J., agrees to the conclusion.

BROWN, J., concurs specially.

BROWN, J, (concurring).—Under the facts of this case, I think it can be said that the property of this corporation, here in question, is "held and used exclusively" for a "municipal" purpose, and hence is exempt from taxation under Section 16 of Article XVI of our Constitution.

## ON REHEARING

PER CURIAM.—Counsel for plaintiff in error having filed in this cause petition for rehearing and having been duly considered, it is ordered by the Court that said petition be and the same is hereby denied.

WHITFIELD, TERRELL, BUFORD, CHAPMAN and THOMAS, J. J., concur.

Brown, C. J., dissents.

Brown, C. J. (dissenting).—Upon the original consideration of this case I concurred specially in the affirmance of the action of the court below upon the theory that under the facts of this particular case, the property involved is "held and used exclusively" for a municipal purpose and would therefore be exempt from taxation under Section 16 of Article XVI of the Constitution. Upon further consideration of the case on petition for rehearing, I have reluctantly reached a contrary conclusion; that is, I have reached the conclusion that the property involved is not held and used *exclusively* for a municipal purpose. It is undoubtedly held and intended to be used for a most praiseworthy and laudable public purpose, but not for an *exclusively* municipal purpose. I must therefore recede from my former concurrence in the judgment of affirmance and from the conclusion reached in my brief special concurring opinion.

I think that the petition for rehearing should be granted.