686 So.2d 1391 (1997)
Ronald SCHULTZ, etc., Appellant,
v.
CRYSTAL RIVER THREE PARTICIPANTS, etc., Appellee.
No. 96-1561.
District Court of Appeal of Florida, Fifth District.
February 7, 1997.
Paul M. Hawkes, Crystal River, for Appellant.
Robert A. Butterworth, Attorney General, and Joseph C. Mellichamp, III, Senior Assistant Attorney General, Tallahassee, for Amicus Curiae Department of Revenue.
Steven R. Bechtel of Mateer & Harbert, P.A., and Thomas B. Tart, Orlando, and Frederick M. Bryant of Williams, Bryant, Gautier & Donohue, P.A., and Robert A. Pierce of Ausley & McMullen, Tallahassee, for Appellee.
W. SHARP, Judge.
Ronald Schultz, as property appraiser of Citrus County, appeals from a summary final judgment which determined that the ownership *1392 interest of several cities[1] in the Crystal River nuclear power plant were exempt from ad valorem taxation. The property appraiser argues that the trial court erred in granting the cities a tax exemption because a private corporation owns more than ninety percent of the plant and manages the facility. We disagree and affirm.
Crystal River Unit Three is a nuclear powered electricity generator plant located in Citrus County. The power plant is jointly owned by the cities, an electric cooperative and Florida Power Corporation, a private utility company. Florida Power Corporation owns 90.4437 percent of the plant and the cities collectively own 7.8533 percent.[2] To fund the acquisition of their ownership interests, the cities issued municipal tax exempt revenue bonds. The cities also entered into the Crystal River Unit Three Participation Agreement, which provides for the management of the power plant by Florida Power Corporation. Under the agreement, the cities are required to pay an amount equal to their percentage interests for the operating costs of the power plant and are entitled to an amount of electricity equal to their respective percentage of ownership interests.
The Citrus County Value Adjustment Board granted a tax exemption to the cities for their respective ownership interests, for the tax year 1993. The property appraiser then filed this lawsuit challenging the action of the Board. The court below concluded that the cities were entitled to ad valorem property tax exemptions for their undivided fee simple interests in the power plant. The court found that the cities used their ownership interests exclusively for the generation and transmission of electricity, which is a public or municipal purpose.
On appeal, the property appraiser contends that the trial court erred in holding that the cities' fee simple interests in the power plant were exempt from taxation. The property appraiser correctly points out that generally, all property is subject to taxation unless expressly exempt and that exemptions are strictly construed against the party claiming them. Sebring Airport Authority v. McIntyre, 642 So.2d 1072 (Fla. 1994). In support of their claim of exemption, the cities rely on Article VII, section 3(a) of the Florida Constitution and section 196.199, Florida Statutes (1993).
Article VII, section 3(a) provides as follows:

All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation. (emphasis added)
Section 196.199(1)(c) provides as follows:
(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
* * * * * *
(c) All property of the several political subdivisions and municipalities of this state or of entities created by general or special law and composed entirely of governmental agencies, or property conveyed to a nonprofit corporation which would revert to the governmental agency, which is used for governmental, municipal, or public *1393 purposes shall be exempt from ad valorem taxation, except as otherwise provided by law. (emphasis added)
The parties stipulated that the cities own a 7.8533 percent interest of the nuclear power plant and that the power plant is used exclusively for the generation of electricity. The furnishing of electricity constitutes a municipal purpose. Northcutt v. Orlando Utilities Commission, 614 So.2d 612 (Fla. 5th DCA 1993), approved sub nom, Ford v. Orlando Utilities Commission, 629 So.2d 845 (Fla.1994). Since the property interests of the cities are being used for the generation of electricity and the generation of electricity is a municipal purpose, the trial court was correct in granting the municipalities a tax exemption.
The property appraiser argues that the cities failed to show that the property is being used "exclusively" by them because Florida Power Corporation owns over ninety percent of the power plant. The property appraiser also points out that under the participation agreement, Florida Power Corporation solely controls the power plant.
The participation agreement recognizes the municipalities' ownership interests in the power plant and provides that they are entitled to an amount of electricity equal to their respective percentage ownership interests. In addition, the cities are required to pay an amount equal to their percentage interest of the operating cost of the power plant. The cities may sell, lease, or assign their ownership interests in the power plant, subject to a mutual right of first refusal. The cities may also sell all or any portion of their entitlement to electrical energy to third parties without restriction. The agreement provides for appointment of Florida Power Corporation as the cities' agent and manager of the power plant. The participation agreement does not convey an interest in the property to the power company and is not a lease. See Black's Law Dictionary (5th ed. 1979) ("lease" is defined as a "conveyance or grant of estate in real property for a limited term with conditions attached"). Rather, the participation agreement is an agency or management contract to operate the power plant on behalf of the owners.
The property appraiser also argues that there can be no "partial" tax exemptions for property and that the courts cannot "unbundle" and separate out the respective interests of the owners of property.[3] Our opinion in Hausman v. VTSI, Inc., 482 So.2d 428 (Fla. 5th DCA 1985), rev. denied, 492 So.2d 1332 (Fla.1986), cited in support of this proposition, is distinguishable. In that case, the Orange County Property Appraiser appraised the value of time share condominiums on the basis of each unit week rather than on the value of the actual condominium. This court struck down the assessments because the statutes at that time did not authorize such appraisals. The Legislature, however, later provided that the assessed value of each time share development shall be the value of the combined individual time share periods.
We recognize that under Article 7, section 3(a), the cities could be required by general law to make payments to the taxing unit in which their property is located.[4] However, the Legislature has not exercised its discretionary authority under this constitutional provision to enact a general law requiring "payment." See Ford v. Orlando Utilities Commission, 629 So.2d 845 (Fla.1994). In fact, the Joint Power Act, Chapter 361, Part II, which provides the framework for the power plant ownership, provides for taxation of the private interest portion of joint electric projects but not for the municipal or public interest in such projects.
*1394 The Joint Power Act implements the provisions of Article VII, section 10(d) of the Florida Constitution. § 361.10. Article VII, section 10(d) provides as follows:
SECTION 10. Pledging credit. Neither the state nor any county, school district, municipality, special district, or agency or any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
(d) a municipality, county, special district, or agency or any of them, being a joint owner of, giving, or lending of using its taxing power or credit for the joint ownership, construction and operation of electrical energy generating or transmission facilities with any corporation, association, partnership or person.
Section 361.17 provides that no joint electric supply project shall lend or use its taxing power or credit to aid any corporation, association, partnership or person. This section further provides:
The private interest portion of such joint projects shall be subject to all taxation in accordance with their proportionate interest in such projects.
Contrary to the property appraiser's argument, this section seems intended to simply clarify that the private interest in the joint project remains taxable and that the municipal portion of the project is tax exempt. Other portions of the Act indicate that the municipal portion of the project is tax exempt. For example, under the Act, a municipality may issue bonds (in accordance with chapter 159) to finance or refinance the cost of the power plant, as was done by the cities here. Section 159.15(1) specifically provides as follows:
159.15 Tax exemption and eligibility as investments.
(1) It is hereby found and determined that all of the purposes for which revenue bonds are authorized to be issued by this part constitute essential governmental purposes, and all of the properties, revenues, moneys and other assets owned and used in the operation of such projects, and all revenue bonds issued hereunder and the interest thereon shall be exempt from all taxation by the state or by any county, municipality, political subdivision, agency, or instrumentality thereof....
Under this section, the revenue bonds used to finance the power plant and the property used in the operation of the power plant (at least to the extent of a city's governmental ownership) are tax exempt. It would be anomalous to hold the bonds (which constructed the plant) tax free but the plant itself taxable.
AFFIRMED.
PETERSON, C.J., and GOSHORN, J., concur.
NOTES
[1] Alachua, Bunnell, Gainesville, Kissimmee, Leesburg, New Smyrna Beach, Ocala, Orlando (and the Orlando Utilities Commission), and Tallahassee.
[2] The ownership interests are as follows.

City of Alachua 0.0779%
City of Bushnell 0.0388 %
City of Gainesville 1.4079 %
City of Kissimmee 0.6754%
City of Leesburg 0.8244%
City of New Smyrna Beach 0.5608 %
City of Ocala 1.3333 %
City of Orlando and the Orlando Utilities Commission 1.6015 %
City of Tallahassee 1.3333 %
Seminole Electric Cooperative, Inc. 1.6994 %
Florida Power Corporation 90.4473 %
[3] The Legislature, however, has provided for the separation of interests in property in other contexts. See, e.g., § 193.481 (mineral, oil, gas and other subsurface rights treated as a separate interest in real property subject to taxation separate and apart from the fee simple ownership of the property); § 196.031 (exemption of homestead in various amounts depending on circumstances). Section 196.031(1) also specifically provides that the homestead exemption may be apportioned among the owners of the property "as their respective interests shall appear."
[4] The power plant is located outside the cities.